# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

**EDWIN RAMOS, et al.,**

**Plaintiffs,**

**v.**

**JOSE VIZCARRONDO, et al.,**

**Defendants.**

CIVIL NO. 14-1722 (GAG)

## OPINION AND ORDER

On August 1, 2014, Edwin Ramos ("Plaintiff"), brought this employment discrimination action, *pro se*,[1] in the Puerto Rico Court of First Instance against José R. Vizcarrondo-Carrión ("Vizcarrondo-Carrión"), in his individual and official capacity as president of Desarrollos Metropolitanos,[2] Linda Lebber Johnson, and the conjugal partnership composed by them; José A. Vizcarrondo-Toro ("Vizcarrondo-Toro"), Virginia Suarez and the conjugal partnership composed by them; Julio E. Vizcarrondo-Ramírez ("Vizcarrondo-Ramírez"), Nellie Carrión de Vizcarrondo and the conjugal partnership composed by them (collectively "Defendants"). The case was

---

[1] Courts should generally construe *pro se* pleadings liberally. Hughes v. Rowe, 449 U.S. 5, 9 (1980). However, the First Circuit has "long held, and oft repeated that pro se status does not free a litigant in a civil case of the obligation to comply with procedural rules." Goguen v. Allen, 780 F.3d 437, 457 (1st Cir. 2015), cert. denied, 136 S. Ct. 200. See Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008); see also Wightman v. Bureau of Alcohol, Tobacco & Firearms, 755 F.2d 979, 983 (1st Cir. 1985) (finding summary judgment appropriate after district court gave *pro se* litigant "more than ample opportunity to present his case"); Rhode Island Hosp. Trust Nat. Bank v. Howard Commc'ns Corp., 980 F.2d 823, 828 n.8 (1st Cir. 1992) (finding no justification to hold to a less stringent standard a *pro se* litigant who was also a partner at a law firm and was represented by counsel during the district court proceedings).

[2] The Court will use the term "Desarrollos Metropolitanos" to refer to the following group of affiliated companies which are all defendants in this case: DM Group LLC; SMPC LLC; Metropolitan Builders LLC; Resort Builders LLC; VMV Enterprises Corporation; Desarrollos Metropolitanos LLC; 3V LLC; Monterrey Leasing LLC; TP Two LLC; Treasure Point LLC; Desarrollos Metropolitanos S.E.; Resort Builders, S.E., Metropolitan Builders, S.E.; Desarrollos Metropolitanos, Inc.; Metropolitan Builders, Inc.; Institutional Builders, S.E.; Omega Vistamar S.E.; DMI Pension Plan Inc. (See Docket No. 9-1 at 1-2.)

removed from state court by Defendants pursuant to 28 U.S.C. §§ 1331 and 1441.  (See Docket No. 1.)

Plaintiff claims that Defendants engaged in discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-623 and Puerto Rico Law No. 100 of June 30, 1959 ("Law 100"), P.R. LAWS ANN. tit. 29, §§ 146-151; that Defendants wrongfully denied retirement benefits and discriminated against him for exercising his rights under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1140.  (See Docket No. 9-1 at 19-27.)  Plaintiff also seeks redress from injuries suffered as a result of Defendants' unwanted physical contact with Plaintiff under Article 1802 of the Puerto Rico Civil Code ("Article 1802"), P.R. LAWS ANN. tit. 31, § 5141.  Id. at 19.  Finally, Plaintiff has also asserted a claim under Law No. 80 of April 22, 1988 ("Law 80"), P.R. LAWS ANN. tit. 29, §§ 185a-185m.  Id. at 19-22.

Defendants have moved for summary judgment on all claims.  (Docket No. 157.)  Plaintiff responded.  (Docket No. 174.)  Defendants replied, raising several arguments, including Plaintiff's failure to comply with Federal Rule of Civil Procedure 56 and its local counterpart, in addressing and contesting the assertions of fact in Defendants' Statement of Undisputed Material Facts.  Id. at 3.  Plaintiff sur-replied.  (Docket No. 181.)  Defendants move to strike the Sur-Reply in its entirety given that it "fails to address the issues set forth in Defendants' Reply" and "improperly brings matters and documents that he did not address previously in his Opposition."  (Docket No. 182.)  Before analyzing the substantive arguments raised for and against summary judgment, the Court will first address these threshold matters.

1

### I. Defendants' objections to Plaintiff's opposition and Motion to Strike Sur-Reply

A. <u>Anti-Ferreting Rule</u>

Local Rule 56(c) requires an opposing party to admit, deny, or qualify the facts of the moving party, and to support denials or qualifications *with record citations*. L. Cv. R. 56(c) (D.P.R. 2010) (emphasis added). The rule clearly requires the nonmovant to address "each numbered paragraph of the moving party's statement of material facts." <u>Id.</u> The Rule further expands on a nonmovant's responsibility to properly admit, deny, or qualify properly supported assertions of fact:

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

L. Cv. R. 56(e). The Rule's purpose is "to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." <u>Colón-Fontánez v. Municipality of San Juan</u>, 660 F.3d 17, 28 (1st Cir. 2011). The First Circuit has spoken loud and clear as to the virtues of such a rule and the consequences of failing to adhere to its terms. <u>See</u> <u>Puerto Rico Am. Ins. Co. v. Rivera-Vázquez</u>, 603 F.3d 125, 131 (1st Cir. 2010) (<u>citing</u> <u>Ruiz Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000)).

The vast majority of Plaintiff's opposing statements do not cite to evidence on the record in support of their contentions, in direct violation of Local Rule 56. Additionally, Plaintiff did not

file any supporting documents as evidence with his opposition, and instead opted to rely exclusively on the evidence submitted by Defendants as support for their Statement of Uncontested Material Facts.  (See Docket Nos. 159, 171 & 174.)

Plaintiff did not address or did not contest with citations to the record the following statement of facts in Defendants' Statement of Uncontested Facts: 25, 31, 42, 47-49, 51-52, 55-66, 72-114.  (See Docket No. 174 at 3-8.)  Plaintiff also attempted to dispute assertions of fact 115-179 with the following statement from his deposition: "[t]he documents that were provided to me reflect clearly that there was a mistake in the calculations."  (See Docket Nos. 174 at 8; 187-3 at 31.)  In light of Plaintiff's failure to meet the requirements of Local Rule 56 and, the Court deems the following assertions of fact as admitted: 25, 31, 42, 47-49, 51-52, 55-66, 72-179.  (Docket No. 159.)

Moreover, Plaintiff attempted to contest several assertions of fact with inapposite statements from his deposition, which fail to adequately contest any of Defendants' material assertions of fact.  (See Docket Nos. 159 ¶ 18; 174 ¶ 18; see also 187-1 at 72-73.)  The Court will deem as admitted these and any other properly supported assertions of fact in Defendants' Statement of Uncontested Material Facts, not adequately contested by Plaintiff.

B.  Plaintiff's Sur-Reply at Docket No. 181

Plaintiff sur-replied without addressing the matters raised in Defendants' Reply, but rather rehashed some of the arguments raised in the Opposition.  (See Docket No. 181 1-7.)  However, Plaintiff also improperly attempted to raise new theories for relief not raised in the Complaint and arguments against summary judgment not raised in Plaintiff's Opposition (unrelated to matters raised by Defendants in their Reply).  See id. at 9-10.  These arguments were waived by Plaintiff.  See Rocafort v. IBM Corp., 334 F.3d 115, 121 (1st Cir. 2003).

Additionally, after Plaintiff failed to include any supporting documents with his Opposition, he now seeks to introduce new evidence as well as an extension of time for discovery. (Docket No. 181.)  The documents that Plaintiff seeks to introduce into evidence are all in the Spanish language, in clear violation of 42 U.S.C. § 846 and Local Rule 5(g). See Puerto Ricans For Puerto Rico Party v. Dalmau, 544 F.3d 58 (1st Cir. 2008).  Regardless, Plaintiff's attempt to introduce new evidence at this juncture is clearly improper and ignores the Court's Order issued on August 29, 2016:  "The deadline to conduct discovery concluded on August 8, 2016. . . . [A]ny and all discovery that was not timely produced will not be later allowed as evidence in this case." (Docket No. 149.)

Defendants' Motion to Strike Plaintiff's Sur-Reply is thus **GRANTED**. Plaintiff's Sur-Reply at Docket No. 181 is hereby stricken from the record.

## II.     Relevant Factual Background

Desarrollos Metropolitanos is a group of construction companies led by Vizcarrondo-Carrión as President, Vizcarrondo-Toro as Vice-President, and Vizcarrondo-Ramírez as President of the Board of Directors.  (Docket Nos. 159 ¶¶ 1-4; 174 ¶¶ 1-4.)  Plaintiff began his employment with Desarrollos Metropolitanos on October 15, 2001.  (Docket Nos. 159 ¶¶ 5-6; 174 ¶¶ 5-6.)  On or around December 2002, Desarrollos Metropolitanos promoted Plaintiff to the position of Comptroller, which he would occupy until April, 2013.  (Docket Nos. 159 ¶¶ 9-11; 174 ¶¶ 9-10.)

Puerto Rico's prolonged economic malaise has significantly affected Desarrollos Metropolitanos' financial condition.  (Docket Nos. 159 ¶ 13; 174 ¶ 13.)  Gross profit at Desarrollos Metropolitanos LLC—one of the group of companies that comprises Desarrollos Metropolitanos—steadily declined from $7,057,138 in 2011, to a gross loss of $200,999 in 2012,

a gross loss of $1,181,122 in 2013, and a gross loss of $1,194,527 in 2014.  (Docket Nos. 159 ¶¶ 13-16; 174 ¶¶ 13-16.)

Desarrollos Metropolitano's deteriorating financial condition prompted management to implement cost-cutting measures, which involved reducing the group's workforce.  (Docket Nos. 159 ¶¶ 13, 17; 174 ¶¶ 13-16.)  As a result, Desarrollos Metropolitano's workforce was reduced by almost two thirds in four years, from 394 employees in 2012, to 140 in 2015.  (Docket Nos. 159 ¶¶ 18-20; 174 ¶¶ 18-20.)

On April 8, 2013, Plaintiff received notice of a proposed salary reduction that, with the exception of two engineers, would affect all of the Company's employees.  (Docket Nos. 159 ¶ 33; 174 ¶ 33.)  That same day, Vizcarrondo-Carrión and Vizcarrondo-Toro met with Plaintiff in order to inform him that, due to the Desarrollos Metropolitanos' worsening financial condition, Plaintiff's position would have to be eliminated.  (Docket Nos. 159 ¶¶ 36-37; 174 ¶¶ 36-37.)  Afterwards, Plaintiff sent Vizcarrondo-Carrión an email requesting a severance payment as a result of his dismissal and subsequently collected his belongings and emptied his office at Desarrollos Metropolitanos.  (Docket Nos. 159 ¶¶ 38-40; 174 ¶¶ 38-40.)

On April 9, 2013, Vizcarrondo-Carrión replied to Plaintiff's message, claiming that the situation was a misunderstanding and that Plaintiff was not entitled to a severance payment because he had not been terminated.  (Docket Nos. 159 ¶ 41; 174 ¶ 41.)  According to Vizcarrondo-Carrión, instead of terminating Plaintiff, Desarrollos Metropolitanos was offering to maintain his position for up to twelve additional months while he sought other employment opportunities, at which point the Comptroller position would be eliminated.  Id.  Vizcarrondo-Carrión asserted that Desarrollos Metropolitanos did not want Plaintiff to leave the company and that they were counting on him returning and working on that year's audit.  Id.

After sending a follow-up email without obtaining a response, on April 10, 2013, Vizcarrondo-Carrión sent a hand-delivered letter to Plaintiff's residence. (Docket Nos. 159 ¶¶ 42-43; 174 ¶¶ 42-43.) Vizcarrondo-Carrión stated in the letter that the company was construing Plaintiff's unresponsiveness and extended absence without prior notice as resignation from his employment at Desarrollos Metropolitanos. (Docket Nos. 159 ¶ 43; 174 ¶ 43.)

On April 11, 2013, Plaintiff met with Vizcarrondo-Carrión and Vizcarrondo-Ramírez. (Docket Nos. 159 ¶ 44; 174 ¶ 44.) During the meeting, Vizcarrondo-Carrión and Vizcarrondo-Ramírez reiterated that Plaintiff's employment was not terminated and that his position would be maintained for twelve additional months while he sought other employment. (Docket Nos. 159 ¶ 45; 174 ¶ 45.) They also requested the calculation of the severance payment previously demanded by Plaintiff. (Docket Nos. 174 ¶ 45; 187-1 at 122-23.) On that day, Vizcarrondo-Ramírez also sent Plaintiff an email stating that the reduction in revenues that Desarrollos Metropolitanos was experiencing forced the company to implement a salary and benefit reduction plan, which affected Plaintiff. (Docket Nos. 159 ¶ 46; 174 ¶ 46.) Moreover, Vizcarrondo-Ramírez repeated that Plaintiff's position would be eliminated in twelve months if the company's financial outlook did not improve. Id. Vizcarrondo-Ramírez concluded the message requesting that Plaintiff return to work by no later than the next Monday, April 15, 2013. (Docket Nos. 159 ¶ 47; 174 ¶ 47.)

On April 15, 2013, Plaintiff sent Vizcarrondo-Carrión a letter in which he reiterated his claim that Desarrollos Metropolitanos had terminated his employment but that he was willing to return to work under "a framework of respect and dignity." (Docket Nos. 159 ¶ 48; 174 ¶ 48; see also 171-6 at 2.) On May 3, 2013, Vizcarrondo-Carrión sent Plaintiff a letter by certified mail stating that Plaintiff had been absent for almost four weeks and that the company had been forced to incur in additional administrative costs in order to fulfill the tasks abandoned by him. (Docket

Nos. 159 ¶ 49; 174 ¶ 49.)  Plaintiff responded on May 7, 2013, that—as he had previously stated—he was willing to return to work under "a framework of respect and dignity."  (Docket Nos. 159 ¶ 50; 174 ¶ 50.)

On May 24, 2013, Vizcarrondo-Carrión replied to Plaintiff's May 7 letter and reiterated Desarrollos Metropolitanos' offer to maintain Plaintiff's position for twelve months while he sought additional employment opportunities.  (Docket Nos. 159 ¶ 51; 174 ¶ 51.)  That same day Plaintiff sent Vizcarrondo-Carrión a proposed Termination From Employment, Settlement, and General Waiver Agreement.  (Docket Nos. 159 ¶ 97; 174 ¶ 97; see also 171-12.)  In said proposed agreement, Plaintiff demanded the liquidation of his interest in Desarrollos Metropolitanos' Pension Plan, which he estimated to reach $81,000.  (Docket Nos. 159 ¶ 98; 174 ¶ 98.)

Having received no response, on March 23, 2014, Plaintiff sent Vizcarrondo-Ramírez a letter informing that he intended to pursue legal action against Defendants.  (Docket Nos. 159 ¶ 99; 174 ¶ 99; <u>see also</u> 171-13.)  On May 28, 2014, Vizcarrondo-Ramírez informed all of the participants of Desarrollos Metropolitanos' Pension Plan that the same was to be terminated and liquidated effective April 30, 2014 as to all participants "given the by the regulatory requirements" which made it "impossible to continue operations including the cost of the Plan[.]"  (Docket Nos. 159 ¶ 101-102; 174 ¶ 101-102; <u>see also</u> 171-14.)

## III.    Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>see</u> Fed. R. Civ. P. 56(a).  "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it

'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. See Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the Court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayagüez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

More so, under ERISA, a beneficiary may bring a civil suit to enforce her rights under the terms of the benefits plan. 29 U.S.C. § 1132(a)(1)(B). The Court reviews an administrator's decision to deny benefits *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

Firestone Tire & Rubber Co. v. Bruch, 49 U.S. 101, 115 (1989); see also Gross v. Sun Life Assur. Co. of Can., 734 F.3d 1, 11 (1st Cir. 2013).  If the administrator has discretionary authority, the Court must apply an arbitrary and capricious standard.  Firestone, 49 U.S. at 115.  Under such analysis, the Court is not permitted to independently weigh the evidence.  Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002).

In the context of an ERISA benefit denial claim, the non-moving party is "not entitled to the usual inferences in its favor" that would be applied at this summary judgment stage.  Scibelli v. Prudential Ins. Co. of Am., 666 F.3d 32, 40 (1st Cir. 2012); see also Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 813 F.3d 420, 429 (1st Cir. 2016) ("motions for summary judgment in this context are nothing more than vehicles for teeing up ERISA cases for decision on the administrative record.") (citation omitted).

## IV.    Discussion

Defendants have moved for summary judgment on all of Plaintiff's remaining claims: age discrimination under ADEA, retaliation under ADEA and the ERISA, denial of benefits under the ERISA, unjustified dismissal under Law 80 and a tort action under Article 1802 of the Civil Code. As the Court will discuss below, Plaintiff's failure to adequately contest the assertions of fact material to the above claims—discussed in the preliminary matters part of this opinion—or present any evidence to support the claims, as well as the absence of any discussion on their merits, result in there being no genuine material factual disputes that would call for trial.

### A.    Discrimination Claim under the ADEA

The ADEA makes it unlawful for an employer to "refuse to hire or discharge any individual or otherwise discriminate against any individual . . . because of such individual's age[.]"  29 U.S.C. § 623(a)(1).  In order to establish a prima facie case of age discrimination under the ADEA, a

plaintiff must show that: (1) he was at least forty years old when he was fired; (2) his job performance met or exceeded the employer's legitimate expectations; (3) his employer actually or constructively discharged him; and (4) his employer had a continuing need for the services he had been performing or the employer did not treat age neutrally in taking the adverse action. See Del Valle-Santana v. Servicios Legales De Puerto Rico, Inc., 804 F.3d 127, 130 (1st Cir. 2015), cert. denied, 136 S. Ct. 2518 (2016); Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 23 (1st Cir. 2015).

The first two elements are undisputed: Plaintiff was over forty years old when his employment relationship with Desarrollos Metropolitanos ended and he met his employer's legitimate job expectations. (Docket No. 157 at. 9.) Defendants dispute whether Plaintiff was actually or constructively terminated. Id. For purposes of assessing whether Plaintiff has made a prima facie showing of age discrimination, the Court will assume without deciding that Plaintiff was either actually or constructively terminated from his employment at Desarrollos Metropolitanos.

Plaintiff still bears the burden of showing that "his employer had a continuing need for the services he had been performing." Soto-Feliciano, 779 F.3d at 23. To this end, Plaintiff claims that he was replaced by CPA Natalia Galindo. (See Docket No. 174 ¶ 54 at 7.) Defendants, on the other hand, claim that Plaintiff's position was eliminated. (See Docket No. 157 at 12.)

It is undisputed that Natalia Galindo is older than Plaintiff, and that she was hired to perform some, but not all, of Plaintiff's accounting duties. (Docket Nos. 159 ¶¶ 52, 55-56, 60-61; 174 ¶¶ 52, 55-56, 60-61.) As the First Circuit reasoned in Del Valle-Santana, 804 F.3d at 131, the Court need not delve into the issue of whether Natalia Galindo actually assumed all of Plaintiff's job duties given that she is not younger than Plaintiff. See id. ("[a]s the Supreme Court explained

in <u>O'Connor</u>, a prima facie case of age discrimination 'requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion,' and *'such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger*.'" (<u>citing</u> <u>O'Connor v. Consol. Coin Caterers Corp.</u>, 517 U.S. 308, 313 (1996) (emphasis added)).

As Plaintiff has not proffered any evidence that he was replaced by a younger person and since it is undisputed that the person who was assigned some of his accounting duties is older than him, he is unable to meet the forth prong of a prima facie age discrimination case under the ADEA.[3] <u>Del Valle-Santana</u>, 804 F.3d at 131 (holding that Plaintiff failed to establish prima facie case of age discrimination due to lack of evidence that a younger employee was retained in Plaintiff's position). Accordingly, Plaintiff's ADEA discrimination claim is hereby **DISMISSED with prejudice**.

### B. <u>Retaliation Under the ADEA</u>

In addition to prohibiting age discrimination, the ADEA also protects individuals who invoke the statute's protections and suffer adverse consequences at work. <u>Ramírez-Rodríguez v. Boehringer Ingelheim Pharm., Inc.</u>, 425 F.3d 67, 84 (1st Cir. 2005) (citing 29 U.S.C. § 623(d)). To satisfy the requirements for a retaliation claim under the ADEA, Plaintiff must show that: (1) he engaged in ADEA-protected conduct; (2) he was thereafter subject to an adverse employment

---

[3] Plaintiff also failed to proffer any direct evidence of discrimination. Although he claims that in 2004 Vizcarrondo-Ramírez told him "that happens when you're getting old, that happens when you are above forty that happens", in reference to a minor stroke that Plaintiff had suffered (Docket Nos. 159 ¶¶ 64-65, 174 64-65; <u>see also</u> 187-3 at 11, lines 22-25), it should be noted that, according to the record, Plaintiff was thirty-six years old in 2004. (Docket Nos. 159 ¶ 52, 174 ¶ 52; <u>see also</u> 9-1 ¶ 24; 187-3 at 11, line 21.) These isolated and ambiguous remarks also fail to establish any age-based animus, much less animus that could be reasonably linked to Plaintiff's alleged termination in 2013. <u>See</u> <u>Bonefont-Igaravidez v. Int'l Shipping Corp.</u>, 659 F.3d 120, 125 (1st Cir. 2011) ("probativeness" of remarks is "circumscribed if they were made in a situation temporally remote from the date of the employment decision in question") (citation omitted); <u>see also</u> <u>González v. El Día, Inc.</u>, 304 F.3d 63, 69-70 (1st Cir. 2002) ("'stray workplace remarks,' . . . normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus.").

action; and (3) a causal connection existed between the protected conduct and the adverse employment action. See Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (citing Marrero v. Goya of P.R., Inc., 304 F.3d 7, 22 (1st Cir. 2002)); see also Bennett v. Saint-Gobain Corp., 507 F.3d 23, 32 (1st Cir. 2007).

As to the first prong, an individual engages in protected conduct when he or she has opposed any practice made unlawful by the ADEA or has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under the ADEA. See 29 U.S.C. § 623(d). The analytical framework for ADEA discrimination and retaliation cases was patterned after the framework for Title VII cases (which prohibits employment discrimination on the basis of race, religion, gender, or national origin) and, as such, their precedent is largely interchangeable. See Hazel v. U.S. Postmaster Gen., 7 F.3d 1, 3-4 (1st Cir. 1993); see also Fantini, 557 F.3d at 32. Under both statutes, the practice opposed by an individual alleging a retaliation claim does not actually have to be in violation of the statute in question, because the plaintiff must demonstrate only that he or she had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law. See Ray v. Ropes & Gray LLP, 799 F.3d 99, 107-08 (1st Cir. 2015); see also Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 48 (1st Cir. 2010).

For example, the Title VII opposition clause protects informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges. Fantini, 557 F.3d at 32.

According to Plaintiff, his refusal "to cooperate with false statements and half-truths regarding the case of Mr. López" constitutes a protected activity under 20 U.S.C. § 623(d). (See Docket No. 9-1 at 23.) Richard López-Figueroa ("López-Figueroa") is a former Desarrollos

Metropolitanos employee that sued the company on February 14, 2012, claiming to have been a victim of age discrimination. (Docket Nos. 159 ¶ 66; 174 ¶ 66) (see Lopez-Figueroa et al v. Desarrollos Metropolitanos LLC et al., Civil No. 12-1100-CCC (D.P.R. filed Feb. 14, 2012.) As part of the discovery process in that case, Desarrollos Metropolitanos asked Plaintiff to answer a First Set of Interrogatories and Request for Production of Documents. (Docket Nos. 159 ¶ 67; 174 ¶ 67; see also 159-18.)

Plaintiff claims to have opposed some of the answers suggested by the attorney representing Desarrollos Metropolitanos in that case, José Nolla ("Nolla"). (Docket Nos. 159 ¶¶ 67-68; 174 ¶¶ 67-68, 74; see also 171-11.) The only evidence on the record related to Plaintiff's alleged protected activity is a chain of emails between Plaintiff and Nolla between November 13 and November 26, 2012. (See Docket No. 171-11.) In the emails, Plaintiff objects to the proposed answer to question #3, related to Plaintiff's employment history at Desarrollos Metropolitanos. Id. at 1. Plaintiff requested that the proposed answer be modified to state that he had worked at Desarrollos Metropolitanos since October 15, 2011, without interruption. Id. The final document incorporated the request and was signed by Plaintiff. (Docket Nos. 159 ¶ 71, 74; 174 ¶ 71; see also 171-11.) Plaintiff did not express opposition to any other action by Desarrollos Metropolitanos regarding López-Figueroa's case. (Docket Nos. 159 ¶ 72-73, 76; 174 ¶ 72-73, 76.)

The conduct that Plaintiff claims to have opposed does not represent a "practice made unlawful by [the ADEA]". 29 U.S.C. § 623. In order to properly constitute a protected activity, the action must have been "taken to protest or oppose statutorily prohibited discrimination." Fantini., 557 F.3d at 32. Given that the conduct protested by Plaintiff does not even remotely resemble a discriminatory practice based on age or a practice made unlawful by the ADEA,

Plaintiff is unable to show a "good faith reasonable belief that the underlying challenged actions of the employer violated the law." Id. (citation omitted)

Plaintiff's failure to provide evidence that he opposed a practice made unlawful by the ADEA defeats his retaliation claim under said statute. Id. Accordingly, Plaintiff's retaliation claim under the ADEA is **DISMISSED with prejudice**.

### C. ERISA Retaliation

Plaintiff claims that Desarrollos Metropolitanos' decision to terminate and liquidate the company's retirement plan—notified on June 2, 2014—was in retaliation for his intention to sue Desarrollos Metropolitanos, reiterated in a letter sent to Vizcarrondo-Ramírez on April 3, 2014. (See Docket Nos. 9-1 at 26; 159 ¶¶ 99-100; 174 ¶¶ 99-100; see also 171-13.) Plaintiff seeks redress from Desarrollos Metropolitanos' alleged retaliatory conduct under Section 510 of the ERISA. (See Docket No. 9-1 at 26.)

Section 510 proscribes an employer from taking an adverse employment action against an employee "for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan". 29 U.S.C. § 1140. In order to successfully pursue a claim under Section 510 of the ERISA, a Plaintiff must show that "the employment action was taken with the specific intent of interfering with the employee's ERISA benefits." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (citations omitted). In other words, the ERISA requires a showing of "specific intent". Id. Accordingly, even if an employee is successful in proving that "the loss of benefits was a consequence of" the adverse action, but falls short of proving that it was "a motivating factor behind" the action, his claim under Section 510 would fail. Id. See also Kouvchinov v. Parametric Tech. Corp., 537 F.3d 62, 66–67 (1st Cir. 2008).

Defendants have stated that the decision to terminate and liquidate Desarrollos Metropolitanos' pension plan was made as to all of the plan's participants and that the decision stemmed from the company's inability to assume the costs associated with funding and administrating the plan. (See Docket Nos. 157 at 23; 159 ¶¶ 100-102; 174 ¶¶ 100-102.) Plaintiff has failed to address Defendant's Motion for Summary Judgment as to the ERISA retaliation claim or the relevant assertions of fact in Defendants' Statement of Uncontested Material Facts. (See Docket Nos. 74 at 8; see also 159 ¶¶ 88-114; 174 ¶¶ 88-114.)

Since Desarrollos Metropolitanos has "articulate[ed] a legitimate, nondiscriminatory reason for the adverse employment action", for Plaintiff's claim to survive the Court must find a genuine issue of fact on whether "the reasons given by the employer are a pretext for discrimination." Kouvchinov, 537 F.3d at 67. Plaintiff, however, has not set forth any evidence that would raise a genuine issue of fact as to Desarrollos Metropolitanos' financial, non-discriminatory, reasons behind terminating and liquidating the pension plan.

There is no evidence on the record that would support a finding that Desarrollos Metropolitanos took any adverse employment action to affect his rights under the company's pension plan. Therefore, Plaintiff's retaliation claim under the ERISA is hereby **DISMISSED with prejudice**.

## D. ERISA Denial of Benefits

Plaintiff has filed a claim under Section 502(a)(1)(B) of the ERISA, which allows a qualifying pension plan's participant or beneficiary to file a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Essentially, Plaintiff disagrees with Desarrollos Metropolitanos' calculation of his interest in the company's

pension plan. (See Docket 9-1 at 24-25.) Defendants have moved for summary judgment on Plaintiff's denial of benefits claim under Section 502 of the ERISA, arguing that Plaintiff has not proffered any evidence that would raise an issue of fact as to Desarrollos Metropolitanos' calculations of Plaintiff's benefits under the company's pension plan. (Docket No. 157 at 25-30.)

Defendants urge the court to apply an "arbitrary and capricious" standard in reviewing Plaintiff's denial of benefits claim. (Docket No. 157 at 27.) However, since Defendants have not made a showing that Desarrollos Metropolitanos' pension plan afforded its administrator discretionary authority to determine eligibility for *benefits*, a "de novo" review of the decision is appropriate. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989); see also Rodríguez-López v. Triple-S Vida, Inc., 850 F.3d 14, 21 (1st Cir. 2017).

Under this standard, if there is a "dispute over the meaning of plan language, no deference is given to the administrator's interpretation of the plan language." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005). In ruling on the claim, a "court interprets the plan de novo, and applies the normal rules for contract interpretation." Id. (citations omitted)

Desarrollos Metropolitanos' pension plan ("Plan") was a defined benefit plan created through a "Declaration of Trust" issued on February 22, 1974. (Docket Nos. 159 ¶ 77; 174 ¶ 77.) According to the terms of the Plan, the value of Plaintiff's retirement benefits are determined by the sum of: (1) one percent of Plaintiff's Average Compensation;[4] (2) plus two percent of Plaintiff's Average Compensation in excess of Plaintiff's Compensation;[5] (3) multiplied by the

---

[4] "Average Compensation" is defined as a participant's average monthly salary during the consecutive five-year period of highest compensation during the last ten years of employment prior to retirement. (Docket Nos. 159 ¶ 84; 174 ¶ 84; see also 159-20 at 8-9.)

[5] According to the Plan's terms, "Compensation" is defined as the monthly equivalent of a participant's annual pay on the effective date or on an anniversary date. A participant's annual pay does not include bonuses, commissions, overtime or any other form of non-recurring compensation. (Docket Nos. 159 ¶ 85; 174 ¶ 85; see also 159-20 at 4.)

Plaintiff's Credited Service. (Docket Nos. 159 ¶ 82; 174 ¶ 82; see also 159-20 at 4.) This is the same formula and methodology used to calculate all of Desarrollos Metropolitanos' employees benefits under the Plan. (Docket Nos. 159 ¶ 151; 174 ¶ 151.)

Based on the Plan's formula and methodology described above, the value of Plaintiff's benefits, as a lump sum payment, had the Pension Plan been fully funded at the time of his termination was $38,274.00. (Docket Nos. 159 ¶ 148; 174 ¶ 148; see also 159-21.) However, due to the Plan's funding shortfall, Plaintiff's net benefits are $12,341.63. (Docket Nos. 159 ¶ 149; 174 ¶ 149; see also 159-21.)

Plaintiff's objection to the above figure is based on his interpretation that the term "Compensation" should include base salary *plus* bonuses. (Docket Nos. 159 ¶¶ 141-143; 174 ¶¶ 141-143.) Conversely, Desarrollos Metropolitanos argues that the term *only* includes base salary. (Docket Nos. 159 ¶ 85; 174 ¶ 85.) As the Plan's terms explicitly exclude "bonuses, commissions, overtime or any other form of non-recurring compensation" from the definition of "Compensation", Plaintiff's objection is evidently meritless. (See Docket No. 159-20 at 4.)

Plaintiff's lump sum benefits under the Plan thus amount to $12,341.63, the same figure calculated by the Plan's administrator and Desarrollos Metropolitanos. Plaintiff's denial of benefits claim under Section 502 of the ERISA thus fails and is hereby **DISMISSED with prejudice**.

### E. Law 100

Law 100 is Puerto Rico's anti-discrimination statute. The statute imposes civil liability on an employer who discharges or discriminates against an employee on the basis of age, race, gender, and religion, among other things. P.R. LAWS ANN. tit. 29, §§ 146-151. The First Circuit has held that "on the merits, age discrimination claims asserted under the ADEA and under Law 100 are

coterminous." <u>Dávila v. Corp. De P.R. Para La Difusión Pública</u>, 498 F.3d 9, 18 n.4 (1st Cir. 2007) (reasoning that the differences between Law 100 and the ADEA are immaterial when Plaintiff has proffered no evidence of age-based discriminatory animus). In the context of age discrimination, Law 100 "differs from the ADEA only with respect to how the burden-shifting framework operates." <u>Id.</u>

As discussed in the ADEA age discrimination analysis above, Plaintiff has not presented any evidence to establish a genuine issue of material fact with regard to his claim of age discrimination. Therefore, the Court hereby **DISMISSES with prejudice** Plaintiff's Law 100 claim.

### F. Law 80

Law 80 provides a remedy for unjust dismissal. <u>See</u> P.R. LAWS ANN. tit. 29, § 185b. A dismissal without just cause is "[one] made by mere whim or fancy of the employer or without cause relative to the proper and normal operation of the establishment [.]" <u>Id.</u> § 185b. The statute deems certain termination rationales as "just cause", including "[r]eductions in employment made necessary by a reduction in the anticipated or prevailing volume of production, sales or profits at the time of the discharge." <u>Id.</u> § 185b(f). If an employee's termination is supported by "just cause", then "the employer will escape liability under Law 80." <u>Ruiz-Sánchez v. Goodyear Tire & Rubber Co.</u>, 717 F.3d 249, 254 (1st Cir. 2013)

The employer bears the ultimate burden of proving just cause to terminate the employee. <u>See</u> P.R. LAWS ANN. tit. 29, § 185k; <u>Alvarez–Fonseca v. Pepsi Cola of P.R. Bottling Co.</u>, 152 F.3d 17, 28 (1st Cir. 1998). Law 80 also follows the burden-shifting scheme followed by Title VII and the ADEA. <u>See</u> <u>Cruz v. Bristol-Myers Squibb Co., P.R., Inc.</u>, 699 F.3d 563, 572 (1st Cir. 2012).

As previously held, Plaintiff has not identified any evidence from which it could be inferred that his alleged termination was due to any type of discrimination. On the other hand, it is undisputed that Desarrollos Metropolitanos' sales were rapidly declining when the decision to eliminate Plaintiff's position was made. (Docket Nos. 159 ¶¶ 13-16; 174 ¶¶ 13-16.) Accordingly, Desarrollos Metropolitanos has shown the decision to eliminate Plaintiff's position was "due to the financial crisis that the Company was facing". (Docket No. 159 ¶ 37.) It is also undisputed that Desarrollos Metropolitanos reduced its workforce as a result of this decrease in sales. (Docket Nos. 159 ¶¶ 13-16; 174 ¶¶ 13-16.)

Plaintiff has failed to point to any evidence that would raise an issue of fact as to Desarrollos Metropolitanos' reason for eliminating Plaintiff's position. Plaintiff's termination was thus for "just cause" under P.R. LAWS ANN. tit. 29, § 185b(f). As a result, Plaintiff's Law 80 claim is hereby **DISMISSED with prejudice**.

G. Article 1802

To succeed in an Article 1802 claim the plaintiff must prove: (1) culpable or negligent conduct by the defendant; (2) injuries or damages; and (3) that the plaintiff's injuries or damages were caused by the defendant's negligent or culpable conduct. P.R. LAWS ANN. tit. 31 § 5141. Plaintiff's Article 1802 claim is premised "on undesired physical contact" by Vizcarrondo-Toro. (See Docket No. 9-1 at 16-17, 21.) Plaintiff did not address the Article 1802 in his Memorandum in Opposition to Defendant's Motion for Summary Judgment, nor did he point to any evidence on the record that would support the claim. (See Docket No. 174.) For that reason, Plaintiff's Article 1802 claim is hereby **DISMISSED with prejudice**.

### V.     Conclusion

In summary, Defendants Motion for Summary Judgment at Docket No. 157 is **GRANTED** as to Plaintiff's age discrimination claims under the ADEA and Law 100; Sections 502 and 510 of the ERISA; Law 80; and Article 1802. Accordingly, all of Plaintiff's remaining claims are hereby **DISMISSED with prejudice**.

**SO ORDERED.**

In San Juan, Puerto Rico this, 8th day of May, 2017.

*/s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
UNITED STATES DISTRICT JUDGE